Electronically Filed - Jackson - Kansas City - September 21, 2017 - 09:57 AM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

| | |
|---|---|
| **ALEXANDRIA M. JOHNSON,**<br>**Address:**<br>131 E. Calico Drive<br>Raymore, Missouri 64083<br><br>**Plaintiff,**<br><br>v.<br><br>**C.H. ROBINSON COMPANY, INC.,**<br>**Serve at:**<br>Registered Agent<br>CSC-Lawyers Incorporating Service<br>221 Bolivar Street<br>Jefferson City, Missouri 65101<br><br>**CLAIRE BARKER, an individual,**<br>**Serve at:**<br>901 Carondelet Drive W<br>Kansas City, Missouri 64114<br><br>**CURTIS MCCOSKEY, an individual,**<br>**Serve at:**<br>901 Carondelet Drive W<br>Kansas City, Missouri 64114<br><br>**COLTON HORSBURGH, an individual,**<br>**Serve at:**<br>901 Carondelet Drive W<br>Kansas City, Missouri 64114<br><br>and<br><br>**NEIL THIELEN, an individual,**<br>**Serve at:**<br>901 Carondelet Drive W<br>Kansas City, Missouri 64114<br><br>**Defendants.** | **Case No.**<br><br>**Division No.** |

## PETITION FOR DAMAGES

EXHIBIT
A

Plaintiff Alexandria M. Johnson ("Plaintiff" or "Johnson"), by and through her attorneys of record, and for her Petition for Damages against Defendants C.H. Robinson Company, Inc., Claire Barker, Curtis McCoskey, Colton Horsburgh, and Neil Thielen (collectively, "Defendants"), respectfully states as follows:

## PARTIES

1.     Johnson is a citizen of the United States, presently residing in Cass County, Missouri.

2.     At all times relevant to this action, Johnson was employed by Defendants.

3.     Defendant C.H. Robinson Company, Inc. ("CHR") is a foreign company organized under the laws of the State of Minnesota, with the following registered agent and office in Missouri: CSC-Lawyers Incorporating Service Company, 221 Bolivar, Jefferson City, Missouri 65101.  At all times relevant to this action, C.H. Robinson Company, Inc. was authorized to conduct business in the State of Missouri, and was doing business in the State of Missouri.  At all times relevant to this action, C.H. Robinson Company, Inc. was an "employer" within the meaning of the Missouri Human Rights Act ("MHRA"), R.S.Mo. § 213.010, *et seq.*

4.     Defendant Claire Barker ("Barker") is a citizen of the United States, and resident of the State of Missouri. At all times relevant herein, Barker was employed by CHR, and acted directly in the interest of CHR.  At all times relevant to this action, Barker was an "employer" within the meaning of the MHRA.

5.     Defendant Curtis McCoskey ("McCoskey") is a citizen of the United States, and resident of the State of Missouri.  At all times relevant herein, McCoskey was employed by CHR, and acted directly in the interest of CHR.  At all times relevant to this action, McCoskey was an "employer" within the meaning of the MHRA.

2

6.     Defendant Colton Horsburgh ("Horsburgh") is a citizen of the United States, and resident of the State of Missouri.  At all times relevant herein, Horsburgh was employed by CHR, and acted directly in the interest of CHR.  At all times relevant to this action, Horsburgh was an "employer" within the meaning of the MHRA.

7.     Defendant Neil Thielen ("Thielen") is a citizen of the United States, and resident of the State of Missouri.  At all times relevant herein, Thielen was employed by CHR, and acted directly in the interest of CHR.  At all times relevant to this action, Thielen was an "employer" within the meaning of the MHRA.

<h3 align="center">JURISDICTION AND VENUE</h3>

8.     Jurisdiction and venue are proper in the Circuit Court of Jackson County, Missouri, pursuant to R.S.Mo. § 508.010 and R.S.Mo. § 213.111.1.

<h3 align="center">EXHAUSTION OF ADMINISTRATIVE REMEDIES</h3>

9.     On or about June 9, 2016, Johnson timely filed a Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"), due to their work-sharing agreement.

10.    On June 26, 2017, the MCHR issued to Johnson a Notice of Right to Sue with respect to her Charge of Discrimination, and this lawsuit was filed within 90 days of the issuance of that Notice of Right to Sue.

11.    The aforesaid Charge of Discrimination, and any amendments made thereto, provided the EEOC and/or MCHR sufficient opportunity to investigate the full scope of the controversy between the parties.

12.    Johnson has satisfied all prerequisites to the institution of this action.

<h3 align="center">GENERAL ALLEGATIONS COMMON TO ALL COUNTS</h3>

3

13. Johnson was hired by CHR as an Account Manager in February 2015.

14. Johnson was hired in CHR's Kansas City logistics facility located at 901 Carondelet Drive W, Kansas City, Missouri 64114.

15. Throughout her employment, Johnson reported to McCoskey (Supervisor, Account Management), Horsburgh (Manager, Account Management), and Thielen (Supervisor, Account Management). The General Manager of the Kansas City office was Barker.

16. From the beginning of her employment through January 2016, Johnson satisfactorily performed the job duties and requirements of her job.

17. During her first year of employment, Johnson was offered many new accounts, including several top accounts.

18. In or about August 2015, Johnson was selected by CHR to be on the Employee Activity Committee.

19. During her first year of employment, Johnson did not receive any formal disciplinary actions suggesting any major performance concerns.

20. On or about January 16, 2016, Johnson attended CHR's annual holiday party in downtown Kansas City, Missouri, along with other employees of CHR and their spouses.

21. During the holiday party, all "new employees" (those with less than one year of employment) were told to come forward to the front of the reception hall.

22. The new employees were told they would participate in a "dance off" that would be judged by more tenured employees of CHR.

23. After the "dance off" ended, the DJ announced: "We need Alex and Alex out on the dance floor." At that time, the DJ began playing the song "My Pony" by Ginuwine.

4

24.     Alex Borgs ("Borgs"), one of Johnson's male co-workers at CHR, grabbed a chair and put it in the middle of the dance floor.

25.     Borgs then took Johnson by the hand, led her out to the dance floor, and sat her down in the chair.

26.     Borgs then performed a "strip-tease" on Johnson.

27.     During the strip-tease, Borgs "grinded" his body on Johnson, straddled Johnson's lap, and touched many parts of Johnson's body.  When Johnson attempted to get up, Borgs grabbed Johnson and pulled her back into the seat.  As Borgs continued to straddle Johnson, he took off his tie, unbuttoned his shirt, put his tie around Johnson's neck, and pulled her head into his body.  Near the end of the song, a former male employee of CHR approached Borgs and said, "Okay, this has gone way too far," and pulled Borgs off Johnson.

28.     Johnson was offended, embarrassed, and humiliated by Borg's strip-tease.

29.     Johnson went to the women's restroom, locked herself in a stall, and cried.

30.     Soon, some of Johnson's co-workers came into the restroom to comfort her.

31.     Eventually, Barker came into the restroom.  Barker told Johnson that the strip-tease was "partially" her fault because she had given Borgs permission to perform the strip-tease, although she did not expect it would "get that out of hand."

32.     Barker then told Johnson to not let the strip-tease ruin her night, because she had "no reason to be embarrassed – it was [Borgs] who looked stupid."

33.     Upon leaving the restroom, Johnson received awkward stares from her co-workers and the others at the party.  Further embarrassed, Johnson left the party and went back to her hotel room.

34. The following evening, Barker called Johnson to "check in." Barker told Johnson that she wanted to "put [the strip-tease] behind us."

35. Barker told Johnson that "people are more likely to talk about other things that happened [at the party]," and that "most people have probably already forgotten about it."

36. Later that evening, Johnson sent a text message to Barker to share her feelings about the strip-tease. In response, Barker told Johnson that she would speak with Johnson the following day at work.

37. On or about January 18, 2016, Johnson met with Barker. During the meeting, Barker told Johnson that the text message Johnson sent "really caught her off guard." Barker then asked Johnson to elaborate on her feelings. Johnson told Barker that Borg's strip-tease made her feel dirty, disgusted, and violated.

38. Johnson told Barker that being a 28-year-old single mother who has never been married was hard enough, and that she did not want to fight off any new perceptions caused by the strip-tease. Johnson told Barker that she was afraid her co-workers would look at her as unprofessional and that it would take away from all the hard work she had put in at work. Johnson told Barker that it was going to be very difficult to face Borgs at work, and that she preferred not to come in every day and feel like she had to avoid a co-worker in order to be comfortable in her work environment. Johnson also expressed concern to Barker about why the dance had been approved, and why it was not stopped immediately once it was obvious what was taking place.

39. Barker told Johnson that Borgs felt bad about the situation and that perhaps it was a "culture thing" because "in Germany, that kind of stuff is acceptable." At the end of the meeting, Barker said that CHR's Human Resources had been made aware of the situation.

6

40.     The holiday party was not the first time Johnson had endured sexually offensive comments and conduct:

      a.     McCoskey told a group of female employees that "we know how you white-trash single Moms from Missouri are";

      b.     Thielen asked Johnson, "Have you ever been told that you smell like an underwear store?";

      c.     Thielen asked Johnson to "go to the cuddle room, I will only need a second";

      d.     The work environment in the Kansas City office was a "fraternity-like" atmosphere, where sexual jokes and innuendo was rampant, even by supervisors; and

      e.     Johnson's supervisors referred to themselves as the "Good Ol' Boys."

41.     Following Johnson's complaints to Barker about the sexual misconduct and hostile work environment created by the events at the holiday party, Johnson was subjected to numerous forms of retaliation by Defendants, which culminated in Johnson's discharge from employment.

42.     Over the next three (3) months of Johnson's employment following the holiday party, the following events took place:

      a.     On or about February 3, 2016, Johnson was issued a Personal Improvement Plan ("PIP");

      b.     On or about February 26, 2016, Johnson was removed as the Account Manager for Lifetime Products (one of her largest accounts);

      c.     In late March 2016, Johnson was informed about the opportunity to submit applications for two new accounts (Athens and SweetWorks). Johnson was

7

only given the opportunity to interview for one of them. Other Account Managers were permitted to interview for both; and

d.   Horsburgh and McCoskey began to nitpick and overly criticize Johnson's performance for issues that had never been reported to her previously, and Defendants began to engage in suspicious activity regarding Johnson's accounts and failed to keep her in the loop.

43.   On or about April 12, 2016, Johnson was summoned in to a meeting with Defendants Barker, McCoskey, and Horsburgh, as well as a representative from Human Resources.

44.   During this meeting, Johnson was given a five-page document entitled "Final Written Warning." The Warning contained a list of "performance discussions" that were alleged to have occurred as far back as December 2015.

45.   Barker then told Johnson that her recent workplace behavior was "unprofessional and inappropriate" and "needed to change." Barker also told Johnson that one of Johnson's accounts had demanded a new Account Manager and that Johnson would have no further contact with the account moving forwarding. After forcing Johnson to sign the warning, Barker ordered McCoskey and Horsburgh to leave, and the HR representative remained.

46.   Barker then told Johnson that it had come to her attention that Johnson was still upset about the strip-tease at the holiday party, and that she was told that Johnson had recently mentioned the strip-tease to McCoskey. Johnson began to cry, and confirmed that the incident still made her feel uncomfortable and that, ever since, her co-workers and supervisors had started treating her differently. Johnson told Barker that she was extremely uncomfortable around Borgs, and that she found it difficult to work so close to him. Johnson also told Barker that Borgs would

8

not speak to her and that it was apparent that he was avoiding her. Finally, Johnson told Barker that she felt that the incident was having an adverse impact on her job performance. In response, Barker appeared annoyed. Barker told Johnson that Defendants had done "everything they could do about the situation." At the end of the meeting, Johnson asked if she could stay in the office while she collected her thoughts. Johnson was told by the HR representative and Barker that that would be fine, and that Johnson could work from the computer in the office as well.

47.     Shortly after the meeting, Barker returned to the office and said that she had "overheard" Johnson talking to someone on the phone, and that Johnson was using profanity.

48.     Barker told Johnson that the way Johnson had handled herself on the phone was exactly the type of unprofessional behavior that she found unacceptable. Johnson explained that she was talking to a co-worker and that she was unaware of what exact words she had used. Barker then told Johnson that it would be her last day with CHR, and demanded that Johnson hand-over her ID Badge. Barker told Johnson that she would be escorted out of the building and that Johnson's belongings would be mailed to her. When Johnson began to cry, Barker told Johnson, "Oh Alex, you will be fine. You are so pretty, you will be able to get a job anywhere," and that "maybe this just was not the right industry for you."

49.     Johnson was discharged on or about April 12, 2016.

50.     Following Johnson's discharge, CHR protested and challenged Johnson's application for unemployment benefits.

51.     CHR has a history of sexual misconduct by its employees which contributes to a hostile work environment. CHR previously entered into a Settlement and Consent Decree with the EEOC stating that CHR "shall expressly prohibit sexually provocative entertainment at any

9

Company function or on Company premises at any time." *See Gwen Carlson v. C.H. Robinson Worldwide, Inc.*, No. 0:02-cv-03780-JNE-JJG (Sept. 18, 2006) (Doc. #1060).

52.     CHR's Sexual Harassment and Offensive Behavior policy states that CHR "will not tolerate any form of discrimination, including harassment (based on sex, including pregnancy, age, disability, race, national origin, religion, marital status, sexual orientation, genetic information, etc.) of employees, customers, visitors or anyone else." Additionally, the policy states that CHR "will take all reasonable measures to prevent harassment, including prompt investigation of any complaint of harassment, and immediate and appropriate disciplinary action, where warranted." Finally, the policy states that CHR "prohibits any employee or Company representative from retaliating in any way against anyone who has articulated any concern regarding harassment, discrimination or other violations of Company policies. No adverse action will be taken against a complaining employee as a result of making the complaint, regardless of the outcome of the investigation, unless the complaint was not made in good faith."

53.     Upon information and belief, no employees were disciplined in relation to Johnson's complaints of sexual harassment.

## COUNT I

### Violation under R.S.Mo. § 213.010 *et seq.* – Discrimination Based on Sex

### (Against All Defendants)

54.     Johnson incorporates all previous paragraphs as if fully set forth herein.

55.     At all times relevant to this action, Johnson was a member of a class of persons protected by the MHRA, because of her sex (female).

56.     Defendants, by and through their officers, employees, and agents, discriminated against Johnson because of her sex by issuing Johnson unwarranted disciplinary actions, nitpicking

10

and overly criticizing Johnson's work, subjecting Johnson to offensive sexual comments, discharging Johnson from employment, and challenging her request for unemployment benefits.

57.    Defendants' discriminatory conducted affected the terms and conditions of Johnson's employment.

58.    Defendants' conduct violates Missouri statutes prohibiting discrimination on the basis of sex, R.S.Mo. § 213.010 *et seq*.

59.    Johnson's sex was a contributing factor in Defendants' actions, omissions, and/or conduct.

60.    Defendants knew or should have known of the discriminatory conduct to which Johnson was being subjected.

61.    As a consequent and direct result of Defendants' discriminatory conduct, Johnson has suffered damages.

62.    Defendants' conduct represents a pattern and practice of discriminating against female employees on the basis of their sex.

63.    Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Johnson, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them from like conduct in the future.

64.    Johnson is entitled to recover from Defendants reasonable attorneys' fees and court costs.

65.    WHEREFORE, Johnson requests that the Court enter judgment in her favor and against Defendants for such damages, actual, nominal and punitive, as are fair and reasonable, for

11

her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## COUNT II

### Violation under R.S.Mo. § 213.010 *et seq.* – Retaliation

### (Against All Defendants)

66.     Johnson incorporates all previous paragraphs as if fully set forth herein.

67.     Johnson engaged in protected activity under the MHRA.  This protected activity included, but was not limited to, objecting to discrimination and harassment by complaining about Borg's sexually offensive strip-tease during the holiday party to Defendants, and subsequently complaining about discriminatory and retaliatory conduct by Defendants following her complaints.

68.     After Johnson engaged in such protected activities, Defendants retaliated against her for exercising her statutorily protected rights by adversely altering the terms, conditions and/or privileges of her continued employment, including subjecting her to additional discrimination and harassment by Defendants in the form of comments about Johnson's looks, nitpicking and overly criticizing Johnson's work, unfairly disciplining Johnson, terminating Johnson's employment, and challenging her claim for unemployment benefits.

69.     Johnson's engagement in protected activities was a contributing factor in Defendants' retaliatory conduct taken against Johnson.

70.     Defendants knew or should have known of the illegal conduct to which Johnson was being subjected.

71.     Defendants failed to: (1) prevent, (2) promptly and properly investigate, and (3) promptly take corrective action to stop such illegal conduct to which Johnson was being subjected.

72.     Johnson suffered illegal retaliation at the hands of Defendants during the course of her employment, in violation of R.S.Mo. § 213.070.

73.     As a consequent and direct result of Defendants' retaliatory conduct, Johnson has suffered damages.

74.     Defendants' conduct represents a pattern and practice of retaliating against female employees who make complaints of sexual harassment and discrimination.

75.     Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Johnson, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them from like conduct in the future.

76.     Johnson is entitled to recover from Defendants reasonable attorneys' fees and court costs.

77.     WHEREFORE, Johnson requests that the Court enter judgment in her favor and against Defendants for such damages, actual, nominal and punitive, as are fair and reasonable, for her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## COUNT III

### Violation under R.S.Mo. § 213.010 *et seq.* – Harassment Based on Sex

### (Against All Defendants)

78.     Johnson incorporates all previous paragraphs as if fully set forth herein.

79.     During her employment, Johnson was subjected to unwelcome sexual harassment in the form of sexual comments, comments about Johnson's appearance, and a strip-tease.

80.     The harassment was based on Johnson's membership in a protected class.

13

81.     The harassment affected a term, condition, or privilege of Johnson's employment in that it was sufficiently severe or pervasive to alter the conditions of Johnson's employment and create an abusive, hostile, intimidating and offensive work environment.  The harassment was subjectively intimidating and/or offensive to Johnson and would have been so intimidating and/or offensive to a reasonable person.

82.     Johnson's sex (female) was a contributing factor in the same.

83.     During her employment, Johnson protested and complained to Defendants about the harassing conduct to which she was being subjected.

84.     Defendants knew or should have known of the harassing conduct to which Johnson was being subjected.

85.     Defendants failed to: (1) prevent, (2) promptly and properly investigate, and (3) promptly take corrective action to stop such illegal conduct to which Johnson was being subjected.

86.     Johnson suffered illegal harassment at the hands of Defendants during the course of her employment, based on her sex, in violation of R.S.Mo. § 213.055.

87.     As a consequent and direct result of Defendants' harassing conduct, Johnson has suffered damages.

88.     Defendants' conduct represents a pattern and practice of permitting sexual harassment in the workplace, and further harassing employees who make complaints of sexual harassment.

89.     Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Johnson, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them from like conduct in the future.

14

90.     Johnson is entitled to recover from Defendants reasonable attorneys' fees and court costs.

91.     WHEREFORE, Johnson requests that the Court enter judgment in her favor and against Defendants for such damages, actual, nominal and punitive, as are fair and reasonable, for her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## JURY DEMAND

Johnson hereby requests a trial by jury in the Circuit Court of Jackson County, Missouri, on all counts and allegations of wrongful conduct alleged in his Petition for Damages.

## PRAYER FOR RELIEF

Johnson respectfully prays that this Court grant her the following relief, in an amount that is fair and reasonable, and which is believed to exceed the $25,000.00 threshold for exclusive Circuit Court jurisdiction: (1) all economic loss, including unpaid wages and fringe benefits; (2) nominal or statutory damages for violation of Missouri law; (3) other actual damages, including damages for garden-variety emotional distress; (4) punitive damages; (5) pre-judgement and post-judgment interest at the maximum rater permitted by law; (6) declaratory and injunctive relief; (7) the costs of this action; (8) any reasonable attorneys' fees allowed by law; and (9) any other and further legal or equitable relief that this Court deems just and proper.

15

Dated:  September 21, 2017

Respectfully submitted,

McCLELLAND LAW FIRM
*A Professional Corporation*

By:     /s/ Ryan L. McClelland
   Ryan L. McClelland, MO Bar #59343
   Michael J. Rahmberg, MO Bar #66979
   The Flagship Building
   200 Westwoods Drive
   Liberty, Missouri   64068-1170
   Telephone:     (816) 781-0002
   Facsimile:     (816) 781-1984
   ryan@mcclellandlawfirm.com
   mrahmberg@mcclellandlawfirm.com

   ATTORNEYS FOR PLAINTIFF

16

Electronically Filed - Jackson - Kansas City - September 21, 2017 - 09:57 AM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

ALEXANDRIA M. JOHNSON,

    Plaintiff,

v.

C.H. ROBINSON COMPANY, INC., et al.

    Defendants.

Case No.

Division No.

## MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER

COMES NOW, Alexandria M. Johnson ("Plaintiff"), by and through counsel, and pursuant to Local Rule 4.9, hereby moves for the appointment of HPS Process Service & Investigations, Inc.:

| Jan E. Adams | PPS17-0281 | Sinai Gonzalez | PPS17-0311 | Jaron Perkins | PPS17-0079 |
|---|---|---|---|---|---|
| Michelle L. Adams | PPS17-0282 | Deshun Goldsmith | PPS17-0448 | George Perry | PPS17-0467 |
| Roger E. Adams | PPS17-0283 | Ian Green | PPS17-0449 | Kacie Phelps | PPS17-0415 |
| John T. Adkins | PPS17-0001 | Jason F. Grob | PPS17-0312 | Gregory Piazza | PPS17-0081 |
| Norman E. Allen, III | PPS17-0158 | Ambiko Guice | PPS17-0313 | Vincent A. Piazza | PPS17-0331 |
| Victor R. Aponte | PPS17-0002 | Aloysius C. Guy, Sr. | PPS17-0221 | Timothy S. Pinney | PPS17-0416 |
| Joshua Aragon | PPS17-0285 | David Hahn | PPS17-0486 | Craig J. Podgurshi, Jr. | PPS17-0417 |
| William E. Armstrong | PPS17-0003 | Eric Hahn | PPS17-0224 | Nancy A. Porter | PPS17-0083 |
| Erica Austin | PPS17-0286 | Darnell Hamilton | PPS17-0039 | Andre S. Powell | PPS17-0418 |
| Joseph L. Baska | PPS17-0005 | Alan K. Hancock | PPS17-0040 | Robert J. Proffitt | PPS17-0333 |
| Robert Bassler | PPS17-0482 | Aaron E. Hart | PPS17-0041 | Scott E. Pryor | PPS17-0084 |
| Jason A. Beulke | PPS17-0170 | Larry Haynes | PPS17-0043 | Charles J. Reardon | PPS17-0419 |
| Charles R. Black | PPS17-0171 | Grace M. Hazell | PPS17-0044 | Melinda Rectanus | PPS17-0420 |
| Dianna J. Blea | PPS17-0007 | Charles Helms | PPS17-0314 | Derek L. Reddick | PPS17-0086 |
| Richard J. Blea | PPS17-0008 | Austen Hendrickson | PPS17-0045 | Angela M. Reed | PPS17-0087 |
| Robert A. Blixt | PPS17-0009 | James M. Hise | PPS17-0181 | Christopher J. Reed | PPS17-0088 |
| Joshua Boehm | PPS17-0173 | Gary F. Hodges | PPS17-0260 | Betty G. Rice | PPS17-0421 |
| Ann Bollino | PPS17-0175 | Leonard Horseman | PPS17-0270 | Karen L. Rice | PPS17-0422 |
| Donnie C. Briley | PPS17-0010 | Christopher T. Horton | PPS17-0046 | David M. Roberts | PPS17-0154 |
| Dan Brouillette | PPS17-0292 | Martin J. Hueckel | PPS17-0489 | Patricia J. Roberts | PPS17-0155 |
| Kenneth H. Brown, Jr. | PPS17-0011 | William Humble | PPS17-0048 | Sammie J. Robinson | PPS17-0208 |
| H. Ray Bryant | PPS17-0168 | Mary Hurley | PPS17-0049 | Antonio Roque | PPS17-0424 |
| Leslie A. Bryant | PPS17-0180 | Cameron Jarah | PPS17-0351 | Kelly Ross | PPS17-0092 |
| Frank Bursa | PPS17-0012 | Betty A. Johnson | PPS17-0050 | Richard C. Ross | PPS17-0093 |
| Maurice Burton, Sr. | PPS17-0013 | James D. Johnson | PPS17-0051 | Melissa A. Ruiz | PPS17-0094 |
| William J. Caputo | PPS17-0014 | Mike Johnson | PPS17-0391 | Edna Russell | PPS17-0211 |
| Thomas C. Carter | PPS17-0015 | Calvin Jones | PPS17-0319 | Lee H. Russell | PPS17-0095 |
| Charles Casey | PPS17-0016 | Louis Jones | PPS17-0458 | Lee H. Russell, Jr. | PPS17-0096 |
| George L. Castillo | PPS17-0017 | Samuel Jones, Jr. | PPS17-0052 | Lisa Saturday | PPS17-0335 |
| Sheila Cherry | PPS17-0182 | Donna J. King | PPS17-0053 | Ben Schollnick | PPS17-0336 |
| Trenia Cherry | PPS17-0191 | Cynthia K. Kinnamon | PPS17-0396 | Nathaniel Scott | PPS17-0097 |

| | | | | | |
|---|---|---|---|---|---|
| John A. Clor | PPS17-0018 | Edmund R. Knowles | PPS17-0055 | Mark O. Shiver | PPS17-0337 |
| Kenneth V. Condrey | PPS17-0192 | Wyman T. Kroft | PPS17-0397 | Ronald H. Slingerland | PPS17-0098 |
| Sharon R. Condrey | PPS17-0193 | Kelly Land | PPS17-0057 | Jeremy S. Small | PPS17-0099 |
| William R. Cooper | PPS17-0019 | JoAnn Lane | PPS17-0058 | Monica Smith | PPS17-0100 |
| Monty R. Crabb | PPS17-0021 | Rick Leeds | PPS17-0059 | Bart A. Snow | PPS17-0101 |
| Karen A. Crohan | PPS17-0022 | John Lichtenegger | PPS17-0060 | Anthony Spada | PPS17-0339 |
| Laura Crum | PPS17-0298 | Bert Lott | PPS17-0321 | Melissa Spencer | PPS17-0102 |
| Dennis Dahlberg | PPS17-0023 | Daniel Maglothin | PPS17-0188 | Charles Steffens | PPS17-0340 |
| Mary Dahlberg | PPS17-0024 | J. Matthews Manlich | PPS17-0402 | Randy Stone | PPS17-0159 |
| Gerald R. Deadwyler | PPS17-0300 | Robert A. Manning | PPS17-0061 | Steven A. Stosur | PPS17-0104 |
| Robert DeLacy, Jr. | PPS17-0025 | David Martin | PPS17-0323 | Andrea L. Sweet | PPS17-0106 |
| Robert E. DeLacy, III | PPS17-0026 | Aaron Martinez | PPS17-0404 | Michael D. Talone | PPS17-0498 |
| Dominic DellaPorte | PPS17-0302 | Rick McClain | PPS17-0062 | Walt Thomas | PPS17-0108 |
| Richard Delpratt | PPS17-0303 | Michael J. McMahon | PPS17-0065 | Walt Thomas | PPS17-0499 |
| Kathleen DiNunno | PPS17-0027 | Michael Meade | PPS17-0405 | Vanessa Thompson | PPS17-0109 |
| John Dippenworth | PPS17-0201 | Pamela Meadows | PPS17-0066 | Gary L. Thornton | PPS17-0110 |
| Claudia Dohn | PPS17-0028 | Jerry Melber | PPS17-0067 | Christina Tiffany | PPS17-0429 |
| Joshua Douglas | PPS17-0304 | James O. Miller, Jr. | PPS17-0068 | Ryan Tith | PPS17-0501 |
| Terrace J. Drew | PPS17-0029 | Mark Minga | PPS17-0462 | Gabe Tranum | PPS17-0473 |
| Roland Duff | PPS17-0441 | James Mitchell | PPS17-0069 | John Verstat | PPS17-0111 |
| William W. Edwards | PPS17-0030 | Christopher Miranda | PPS17-0463 | Robert E. Vick, II | PPS17-0112 |
| Abel Emiru | PPS17-0357 | Karina Miranda | PPS17-0464 | Bradley S. Votaw | PPS17-0113 |
| Donald C. Eskra, Jr. | PPS17-0235 | Gillian P. Moberg | PPS17-0411 | Beth M. Wachowski | PPS17-0114 |
| Michael D. Fahnestock | PPS17-0031 | Linda J. Moran | PPS17-0326 | Joseph T. Wachowski | PPS17-0115 |
| Robert D. Fairbanks | PPS17-0032 | Donnie Moreland | PPS17-0412 | Daniel R. Ward | PPS17-0342 |
| David S. Felter | PPS17-0307 | Michael S. Morrison | PPS17-0070 | Kendall Washington | PPS17-0477 |
| Kathleen Felter | PPS17-0308 | Andrew Myers | PPS17-0194 | Eric N. West | PPS17-0117 |
| Erin Fiato | PPS17-0444 | Fred M. Myers | PPS17-0195 | Jonathan Westmoland | PPS17-0118 |
| Stephen H. Folcher | PPS17-0202 | James G. Myers | PPS17-0196 | Alana Willis | PPS17-0431 |
| D.W. Forbes | PPS17-0309 | Stephanie Myers | PPS17-0197 | Deborah A. Wilson | PPS17-0119 |
| Tanya S. Forbes | PPS17-0033 | Wendy Neff | PPS17-0413 | Mitchell A. Wirth | PPS17-0120 |
| Travis Foster | PPS17-0204 | Michael Noble | PPS17-0074 | Ann Wixom | PPS17-0121 |
| Michael M. Gamboa | PPS17-0217 | Trinity N. Olson | PPS17-0075 | Debra Woodhouse | PPS17-0279 |
| Richard Gerber | PPS17-0034 | Jessie Ortiz | PPS17-0328 | Jerry Wooten | PPS17-0122 |
| Paul Gizel | PPS17-0035 | Otis Osborne | PPS17-0329 | Manuel Ybarra | PPS17-0123 |
| Steven D. Glenn | PPS17-0310 | Craig Palmer | PPS17-0076 | C. Fe Young | PPS17-0432 |
| Ronda Goddard | PPS17-0036 | Jeffrey J. Palmer | PPS17-0077 | Ed Young | PPS17-0348 |
| Adam P. Golden | PPS17-0037 | Megan M. Patrick | PPS17-0078 | Sarah Zirakian | PPS17-0433 |
| | | Antonio Perez | PPS17-0414 | Lisa Zychowski | PPS17-0124 |

as private process servers in the above-captioned matter.

In support of said motion, Plaintiff states that the above-named individuals are on the Court's list of approved process servers and the information contained in their applications and affidavits on file is current and still correct.

Electronically Filed - Jackson - Kansas City - September 21, 2017 - 09:57 AM

Dated: September 21, 2017

Respectfully submitted,

McCLELLAND LAW FIRM
*A Professional Corporation*

By: /s/ Ryan L. McClelland
Ryan L. McClelland, MO Bar #59343
Michael J. Rahmberg, MO Bar #66979
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone: (816) 781-0002
Facsimile: (816) 781-1984
ryan@mcclellandlawfirm.com
mrahmberg@mcclellandlawfirm.com

ATTORNEYS FOR PLAINTIFF

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that Plaintiff's Motion for Appointment of Private Process Server is sustained and the above-named individuals are hereby appointed to serve process in the above captioned matter.

DATE: _____22-Sep-2017_____          _Myrtis Hawkins_____

DEPUTY COURT ADMINISTRATOR

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

ALEXANDRIA M. JOHNSON,

                  **PLAINTIFF(S),**          **CASE NO. 1716-CV22758**

**VS.**                                                 **DIVISION 4**

C.H. ROBINSON COMPANY, INC. ET AL,

                  **DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION

---

       NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **JUSTINE E DEL MURO** on **26-JAN-2018** in **DIVISION 4** at **08:30 AM**. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

       A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

       At the Case Management Conference, counsel should be prepared to address at least the following:

      a.     A trial setting;

      b.     Expert Witness Disclosure Cutoff Date;

      c.     A schedule for the orderly preparation of the case for trial;

      d.     Any issues which require input or action by the Court;

      e.     The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ JUSTINE E DEL MURO
JUSTINE E DEL MURO, **Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
RYAN LEE MCCLELLAND, MCCLELLAND LAW FIRM PC, THE FLAGSHIP BUILDING, 200 WESTWOODS DR, LIBERTY, MO 64068

Defendant(s):
 C.H. ROBINSON COMPANY, INC.
CLAIRE BARKER
CURTIS MCCOSKEY
COLTON HORSBURGH
NEIL THIELEN

Dated: 22-SEP-2017

MARY A. MARQUEZ
Court Administrator